UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW HAMPSHIRE

Jackeline Castro

    v.                                           Civil No. 17-cv-399-JD
                                             Opinion No. 2018 DNH 065

Acting Commissioner,
Social Security Administration

O R D E R

Jackeline Castro seeks judicial review, pursuant to 42 U.S.C. § 405(g), of the decision of the Acting Commissioner of Social Security, denying her application for disability benefits under Title II and supplemental security income under Title XVI of the Social Security Act. Castro moves to reverse on the ground that the Administrative Law Judge ("ALJ") erred in relying on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart P, Appendix 2 ("Grid"), to find that she was not disabled. The Acting Commissioner moves to affirm.

Standard of Review

In reviewing the final decision of the Acting Commissioner in a social security case, the court "is limited to determining whether the ALJ deployed the proper legal standards and found facts upon the proper quantum of evidence." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999); accord Seavey v. Barnhart, 276

F.3d 1, 9 (1st Cir. 2001). The court defers to the ALJ's factual findings as long as they are supported by substantial evidence. § 405(g); see also Fischer v. Colvin, 831 F.3d 31, 34 (1st Cir. 2016). Substantial evidence is "more than a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971). When the record could support differing conclusions, the court must uphold the ALJ's findings "if a reasonable mind, reviewing the evidence in the record as a whole, could accept it as adequate to support his conclusion." Irlanda Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (internal quotation marks omitted).

## Background

Castro applied for both disability benefits under Title II and supplemental security income under Title XVI. She claimed a disability beginning in March of 2014 due to an ankle fracture, left hip pain, and mental health impairments. She has a high school education and previously worked as a group leader and an inspector.

The joint statement of material facts indicates that Castro had an ankle injury in May of 2014. She was treated for ankle pain and related depression. The joint statement focuses on her mental health issues.

A state agency psychologist, Jessica A. Stern, examined Castro in November of 2014. Dr. Stern found that Castro had some difficulties in social functioning, concentration, and task completion. She also found that Castro would have trouble adapting to work because of her leg problems and anhedonia (inability to enjoy things that normally would be enjoyable). Dr. Stern diagnosed major depressive disorder, body dysmorphic disorder, and generalized anxiety disorder.

Laura Landerman, Ph.D., another state agency psychologist, provided an opinion based on a review of Castro's records in December of 2014. Dr. Landerman found that Castro had depressive syndrome that caused her to be moderately limited in her ability to interact appropriately with the public and would require a socially isolated work setting. On the other hand, however, Dr. Landerman found that Castro was not limited in her ability to ask questions and get assistance, accept instruction and criticism from supervisors, and get along with co-workers and peers. She found that despite some limitations Castro could work within a schedule, maintain concentration for up to two hours, and work at an acceptable pace without excessive interruptions due to her psychological symptoms. The joint statement indicates that Castro continued to receive counseling and medication management through January of 2016.

A hearing was held before an ALJ on March 17, 2016. The ALJ issued a decision on August 2, 2016, in which he found that Castro was not disabled. The ALJ found that Castro had severe impairments due to reconstructive surgery on her left foot, affective disorder, somatoform disorder, and anxiety disorder. Despite those impairments, the ALJ found that Castro retained the capacity to work at the light exertional level with limitations to occasional postural movement; to doing simple, routine, competitive, repetitive, and non-abstract tasks; to occasional interaction with co-workers and supervisors; and to no interaction with the public.

Based on that residual functional capacity, the ALJ used the Grid to determine that Castro was not disabled. The Appeals Council denied Castro's request for review, making the ALJ's decision the final decision of the Acting Commissioner.

## Discussion

Castro contends that the ALJ erred in relying on the Grid when he found that she had non-exertional limitations. In particular, Castro contends that the limitation that she could only interact occasionally with co-workers and supervisors precluded the ALJ's reliance on the Grid. The Acting Commissioner argues that the ALJ properly relied on the Grid.

In determining whether a claimant is disabled for purposes of social security benefits, the ALJ follows a five-step sequential analysis. 20 C.F.R. § 404.1520.[1] The claimant bears the burden through the first four steps of proving that her impairments preclude her from working. Freeman v. Barnhart, 274 F.3d 606, 608 (1st Cir. 2001). At the fifth step, the Acting Commissioner has the burden of showing that the claimant is employable. Heggarty v. Sullivan, 947 F.2d 990, 995 (1st Cir. 1991).

An ALJ may use the Grid as a "streamlined method" to satisfy the burden at the fifth step "[w]here a claimant's impairments involve only limitations in meeting the strength requirements of work." Id. at 995-96. When a claimant has nonexertional impairments, an ALJ can rely on the Grid only if those impairments do not significantly affect the claimant's ability to do a full range of jobs at the designated exertional level. Id. at 996; accord Candelaria v. Barnhart, 195 Fed. Appx. 2, 3 (1st Cir. 2006). When nonexertional impairments significantly affect the claimant's ability to do the full range

---

[1] For purposes of the issue raised in this case, the pertinent regulations governing disability insurance benefits at 20 C.F.R. Part 404 are the same as the pertinent regulations governing supplemental security income at 20 C.F.R. § 416, and therefore, the court will cite only Part 404 regulations. See Reagan v. Sec'y of Health & Human Servs., 877 F.2d 123, 124 (1st Cir. 1989).

of work, the Acting Commissioner "must carry her burden of showing the availability of jobs in the national economy by other means" which usually requires a vocational expert. Tavarez v. Comm'r of Social Security, 138 Fed. Appx. 327, 329 (1st Cir. 2005).

The question in this case is whether the nonexertional restrictions significantly affected the range of light work that Castro could do.  More specifically, Castro argues that the restriction to only occasional interaction with co-workers and supervisors would significantly affect the range of jobs she could do at the light exertional level.  The Acting Commissioner argues, based on the Programs Operations Manual System ("POMS") definition of what constitutes appropriate responses to supervisors and co-workers, that the restriction did not cause a significant reduction in the available jobs.

The cited provision of POMS states that among the mental abilities needed for any job is the ability to respond appropriately to supervision and to co-workers and, with respect to unskilled work, "the ability to . . . accept instructions and respond appropriately to criticism from supervisors" and "get along with coworkers or peers without (unduly) distracting them or exhibiting behavioral extremes."  POMS DI 25020.010(B)(2) & (3).  The Acting Commissioner relies on Dr. Landerman's opinion to show that Castro did not have any limitations in those

activities and asserts that the ALJ "clearly held" that she did not have those limitations.

It is far from clear to what extent the ALJ's restriction on interaction with supervisors and co-workers would affect Castro's ability to do unskilled work at the light exertional level. The ALJ did not discuss Dr. Landerman's findings and opinions.[2] The restrictions the ALJ included in the residual functional capacity appear to be more limited than Dr. Landerman's opinion suggested. The ALJ did not explain the extent of the restriction he imposed.

In addition, the ALJ did not justify his decision to rely on the Grid by reference to POMS or to any specific evidence in the record. Instead, the ALJ stated only that the nonexertional limitations "have little or no effect on the occupational base of unskilled work." In general, the court cannot affirm an agency decision, including a decision of the Acting Commissioner of Social Security, based on post hoc rationalizations that were not part of the decision. See, e.g., Erickson v. Berryhill, 2018 WL 1177932, at *10 (M.D. Pa. Feb. 14, 2018) (citing SEC v. Chenery Corp., 332 U.S. 194 (1947)); Marcou v. Berryhill, 2017

---

[2] The Acting Commissioner represents to the court that the ALJ gave "great weight" to Dr. Landerman's opinion. Apparently, the Acting Commissioner relies on the ALJ's general statement, without explanation, that great evidentiary weight was given to the opinions of the "non-examining and non-treating expert sources."

WL 4118961, at *5 (D.R.I. Sept. 17, 2017); Miller v. Berryhill, 2017 WL 1021313, at *8 (S.D. Ohio Mar. 16, 2017); Wright v. Colvin, 2016 WL 4083411, at *2-*3 (S.D. Ala. Aug. 1, 2016).

Another judge in this district has held that a restriction to occasional or superficial interaction with co-workers and supervisors precludes reliance on the Grid.[3] Sherman v. Colvin, 2016 WL 7165890, at *5-*9 (D.N.H. Dec. 8, 2016) (citing and discussing cases); Wilt v. Colvin, 2016 WL 5957557, at *5-*7 (D.N.H. Oct. 14, 2016) (citing and discussion cases); see also Gurney v. Astrue, 2010 WL 323912, at *3 (D. Me. Jan. 20, 2010) (finding restriction to occasional interaction with supervisors and coworkers precluded use of Grid). The undersigned judge has also found that limitations on a claimant's ability to interact with the public and coworkers, in the absence of an adequate explanation, preclude reliance on the Grid. Snow v. Colvin, 2015 WL 225437, at *4 (D.N.H. Jan. 15, 2015).

Other courts are divided on the question of whether a restriction to only occasional interaction with co-workers and supervisors significantly affects the full range of unskilled light work. Some courts, as in this district, have found that the same restriction or a similar restriction precludes use of

---

[3] The ALJ restricted Castro to occasional interaction in the residual functional capacity assessment, but he stated in his decision that Castro "can tolerate only occasional, <u>superficial</u> interaction with coworkers and supervisors."

8

the Grid.  See, e.g., Williams v. Colvin, 2016 WL 3034494, at *11-*12 (S.D.N.Y. May 26, 2016) (limitation to occasional interaction with "others" precluded use of the Grid); Morgan v. Comm'r of Social Security, 2015 WL 5178410, at *2 (M.D. FL. Sept. 4, 2015) (citing cases).  On the other hand, some courts have found that such restrictions do not substantially affect the number of jobs available and, therefore, do not preclude use of the Grid.  See Burgard v. Berryhill, 2017 WL 6379237, at *4 (W.D.N.Y. Dec. 14, 2017) (citing other cases from W.D.N.Y.); Hernderson v. Berryhill, 2017 WL 2190658, at *7-*10 (N.D. Ohio Apr. 28, 2017); Rapport v. Comm'r of Social Security, 2017 WL 1284897, at *7 (S.D.N.Y. Apr. 5, 2017); Brown v. Colvin, 2016 WL 2944151, at *4-*5 (D. Conn. May 20, 2016).  See also Champion v. Colvin, 2017 WL 663545, at *8 (E.D. Tenn. Feb. 17, 2017) (noting conflicting results in the districts of the Sixth Circuit and declining to reach the issue).

In this case, the ALJ did not explain why the restriction to only occasional interaction with co-workers and supervisors, along with no interaction with the public, would not significantly affect the range of available light unskilled jobs.  It is not apparent that those restrictions would have little or no effect on the availability of jobs, and there was no evidence from a vocational expert.  Therefore, the Acting

9

Commissioner's reliance on the Grid at Step Five was not appropriate in this case.

## Conclusion

For the foregoing reasons, the claimant's motion to reverse (document no. 7) is granted. The Acting Commissioner's motion to affirm (document no. 8) is denied.

The case is remanded for further proceedings pursuant to Sentence Four of § 402(g).

The clerk of court shall enter judgment accordingly and close the case.

SO ORDERED.

*Joseph A. DiClerico, Jr.*
Joseph A. DiClerico, Jr.
United States District Judge

March 27, 2018

cc: Daniel W. McKenna, Esq.
    Terry L. Ollila, Esq.